## FIRST NAT. BANK OF DUNCAN v. SPARKS et al.

No. 16380—Opinion Filed March 16, 1926.

Rehearing Denied May 18, 1926.

### 1. Fraudulent Conveyances — Evidence — Transaction Between Relatives.

In a suit in equity, attacking a conveyance of lands as fraudulent against creditors, the fact that the parties to the conveyance are related by blood or marriage does not, of itself, establish fraud in such transfer; but such fact of relationship may be considered in connection with other evidence tending to impeach the transaction; and in such case, especially if between near relations, who are members of the same household, the transactions will be given much closer scrutiny than if between strangers.

### 2. Same—Presumptive Evidence—Indicia of Fraud.

In such cases, it is often impossible to prove actual fraud and collusion between the parties to the conveyance, when attacked by third persons, by direct and positive evidence; and the attacking party is often compelled, through the inherent necessities of the situation, to rely upon presumptive evidence growing out of indicia and badges of fraud, developed by the circumstances attending the transaction; and therefore, the range of inquiry in such cases must necessarily be very extensive and bring within its scope all the circumstances bearing upon the question.

### 3. Same—Remedy of Creditors—Attachment.

Where property is conveyed with intent to defraud, the same may be treated as a nullity, and the property may be attached the same as if no conveyance had been made.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Stephens County; M. W. Pugh, Judge.

Action by First National Bank of Duncan against J. R. Sparks and Annie J. Sparks. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Sandlin & Winans, for plaintiff in error.

Womack, Brown & Cund, and J. H. Foster, for defendants in error.

Opinion by MAXEY, C. The parties to this suit stand in the same relation as they did in the trial court, and will be referred to in the same order hereafter.

Plaintiff commenced this action in the district court of Stephens county, Okla., to recover the sum of $2,293.75, due on certain promissory notes for principal, interest, attorneys' fees, and costs. Said notes were signed by J. R. Sparks, one of the defendants; and said petition alleged that J. R. Sparks had no personal property which could be levied on, and that for the purpose of defrauding, hindering, and delaying his creditors, said J. R. Sparks had disposed of a large part of his property, and that he was the owner of certain real estate, which he had deeded to the defendant Annie J. Sparks, for the purpose of placing the same beyond the reach of his creditors, and for the purpose of concealing his property. B. T. Leonard also was made a party defendant, and it was alleged that he claimed some right, title, and interest in and to the real estate described in the petition. At the time of filing suit, plaintiff also filed affidavit of attachment. Order of attachment was issued and the sheriff levied on certain real estate mentioned in the petition and affidavit of attachment. The defendant Annie J. Sparks filed her separate motion to discharge the attachment upon certain grounds, and said defendant J. R. Sparks also filed his separate motion to discharge the attachment, and alleged that the property in question was deeded to the defendant Annie J. Sparks for a valid consideration prior to the indebtedness to the plaintiff of defendant J. R. Sparks; and that the defendant B. T. Leonard held a valid mortgage on the property; that she signed a note given to B. T. Leonard, and also signed, as surety, a note of the defendant J. R. Sparks to the Advance-Rumley Products Company for the purchase of a threshing machine and engine, with the agreement and understanding with the said J. R. Sparks that he should deed her all his property for signing these notes as surety, and for money she had advanced to the said J. R. Sparks, claiming that she also would be legally bound to pay said notes. Annie J. Sparks also filed her answer to the petition of plaintiff, wherein she alleged that J. R. Sparks agreed to convey the said property to this defendant in consideration of the signing of the note by said Annie J. Sparks, and the further consideration that Annie J. Sparks would also sign, as surety, a note, which the said J. R. Sparks intended to make to the Advance-Rumley Products Company, for the purchase of a threshing machine; that she agreed with said J. R. Sparks that she would sign said notes, and did sign said notes, and is now bound thereon; that she had advanced to said defendant J. R. Sparks in cash $1,500, $1,000 of which was paid direct on the said note to the Advance-Rumley Products Company, and $500 of which was paid direct to J. R. Sparks to be applied on said note; that there is still due the Advance-Rumley Products Company the sum of $_____, which she is legally bound to pay. She further alleged that by reason of the premises she has paid a valuable consideration for the property, and she is the legal and equitable owner thereof, subject to the outstanding mortgage to B. T. Leonard; that the deeds executed to her by her husband, J. R. Sparks, were for a valuable consideration, and that she purchased same in good faith, without any notice of the outstanding claims of the plaintiff. J. R. Sparks filed a separate motion in which he admits that on the 15th day of August, 1923, he executed and delivered to the plaintiff for a valuable consideration a promissory note in the principal sum of $399.03, and that said note, as described in plaintiff's petition, is due by plaintiff, as alleged. He further stated in his answer that on the 16th day of October, 1923, he executed and delivered to the plaintiff his promissory note for $1,894.75, with interest at the rate of 10 per cent. per annum, and admits that there is now due on said promissory note the amount alleged by plaintiff. He denies that he is about to, or has conveyed his property for the purpose of placing it beyond the reach of his creditors, and denies that he has property concealed, and denies that he has disposed of any part of his property with the intent to defraud or delay his creditors; and says that the property levied on is the property of Annie J. Sparks, and that she is the sole and absolute owner of said property, except such amount as may be due the outstanding contractual lienors, and alleges that B. T. Leonard holds a good and valid mortgage on said property. He further alleges that Annie J. Sparks paid a good and valid consideration for the property conveyed to her, for the purpose of buying the threshing machine, and denies that he was indebted to the plaintiff in any sum.

The evidence shows that J. R. Sparks, at the time of said conveyance, owed something like $26,000, and in the spring of 1921, he was sued for $10,000 damages in the district court of Oklahoma county by a woman named Ethel Cox for breach of promise. He testified that he sold a hardware business owned by him in September of that year for $21,000; that in September of that year he deeded real property to his wife, the defendant Annie J. Sparks, of the total value of $15,500, being an undivided one-half interest in the hardware building and lot of the value of $6,000, the express building at-

tached in this action of the value of $8,000, and an undivided interest in a 120-acre farm of the value of $1,500, making a total of $36,500; that he deeded other property to his wife at the same time, some of which he afterwards sold and used the money; that the rents received from the two buildings in Duncan at the time of the transfer to Annie J. Sparks amounted to $300 per month, and the buildings have been rented all the time since the transfer and are now bringing $225 per month; that he has received as rental from said buildings more than $8,040. According to the evidence given by J. R .Sparks, Annie J. Sparks, the defendant, received as rental from the two buildings since September 1, 1921, $8,000. J. R. Sparks testified that at the time 'he deeded the property to the defendant Annie J. Sparks, he owed her $800; that since the date of the deed she had received all the rents amounting to about $8,000, and said rents were paid to the defendant Leonard for interest on mortgages he holds on some of the property deeded; that he sometimes paid Mr. Leonard currency, and sometimes with checks; that in the year 1921, he directed the plaintiff, First National Bank, to change his bank account to the name of Annie J. Sparks. · According to J. R. Sparks' testimony, the property conveyed to his wife was largely in excess of any amount that he owed her at that time. B. T. Leonard testified that in the year 1921 the defendant J. R. Sparks owed him $6,000 and took as security his mortgage given on the express building for $2,000, and on the hardware building for $4,000; that J. R. Sparks had paid the interest in cash and checks, some of the checks given to defendant by Annie J. Sparks and indorsed by Annie J. Sparks to J. R. Sparks, and by J. R. Sparks indorsed and given the witness. J. R. Prenti·e, president of the First National Bank, plaintiff, testified that the plaintiff bank had loaned J. R. Sparks money from time to time for a great number of years; that the amount due on the note sued on was owing the bank by the defendant J. R. Sparks; that in the year 1921, witness was asked to change the J. R. Sparks' account to Annie J. Sparks; that said Sparks told witness that he, Sparks, was expecting trouble from some of his creditors. Witness further testified that Annie J. Sparks did not keep her individual account with his bank in Duncan; that she did not want to get her account mixed up with that of J. R. Sparks; that J. R. Sparks, about the time that the account was changed, and just prior to the bringing of this suit, promised the officers of the bank to give a mortgage on the express

building to secure the bank on what he owed it; that he would see if Mrs. Sparks would sign the mortgage also; that it was the understanding between the parties at that time, that J. R .Sparks owned the express building, and that Annie J. Sparks agreed to sign the mortgage, and told witness she had no interest in the property, but that she had signed a threshing machine note with the defendant J. R. Sparks.

The evidence shows beyond any question that the property that J. R. Sparks deeded to his wife, Annie J. Sparks, was largely in excess of the indebtedness that he owed her, and largely in excess of what she claimed she was liable for on notes that she had signed as surety for J. R. Sparks. In addition to this, she received over $8,000 in rents from the premises deeded to her, which amount would more than pay her any indebtedness that her husband owed her, even. if she had to pay the notes that she had signed as his surety. It is clear to our mind that J. R. Sparks became alarmed when he was sued in Oklahoma City for breach of promise for $10,000, and that he commenced conveying his property for the purpose of defeating any judgment that might be recovered against him. The evidence gathered from all of the witnesses as to the value of the property conveyed was that it was worth something like $36,000, and taking what he claimed to owe Leonard and for the threshing machine and what he owed his wife, amounted to something like $8,000, and according to the testimony, the rents collected by Mrs. Sparks amounted to something over $8,000. Just what became of the suit brought against J. R. Sparks in Oklahoma City for breach of marriage, the record does not show.

We cannot say from the evidence that Sparks owed his wife anything whatever, because she received more in rents than he ever owed her, or that she had to pay for him. Mrs. Sparks did not take the stand to give her testimony or to claim the property attached. Equity and good conscience would require her to shape her remedy so as to preserve, if possible, the attachment lien of the plaintiff bank, the whole theory of what is known in equity as marshaling of assets and securities is derived from this principle. "Equity is equality, and he who seeks equity must do equity." Pomeroy's Equity Jur. (3rd Ed.) section 396. Section 410 of the same work reads as follows:

"Section 410. Settlement of Insolvent Estates—Marshaling of Assets—Another remarkable and most just application of the principle, often leading to results very different from those produced by the operation of legal rules, may be seen in all those in-

stances where a court of equity acquires jurisdiction, from any cause, to wind up, distribute or settle an estate, property or fund against which there are a number of separate claimants. One example is that of settling the affairs of an insolvent partnership, corporation or individual debtor in a creditor's suit brought by one on behalf of all other creditors, where the assets are not sufficient to satisfy all demands in full; the court always proceeds upon the principle that equality is equity, and of apportioning the property pro rata among all the creditors. The principle is carried to such an extent in the settlement of insolvent part nerships, and partnerships where one of the members has died, that firm creditors are compelled in the first instance to resort to the firm assets, and creditors of the individual partners to individual assets, before either class can have recourse to any balance left remaining of the other kind of fund. A second example is that of marshaling the assets in the administration of the estates of deceased persons. At the common law certain classes of creditors enjoyed a precedence over others, and were entitled to be paid in full even to the exclusion of the inferior orders, by the administrator or executor out of the legal assets of the decedent's estate, according to their established priority of right. But a court of equity, having obtained jurisdiction over an administration, regards all debts, in general, as standing upon an equal footing, and as entitled to payment pro rata out of the equitable assets, if the estate is not sufficient to pay them all in full, without any reference to their legal right of priority. In order to attain this result, and to carry out the principle of equality is equity in administrations, the doctrine of marshaling assets was established."

This doctrine is supported by this court in the cases of Collier v. Bartlett, 71 Okla. 133, 175 Pac. 247, and Inman et al. v. Western National Bank of Fort Worth, Tex., 83 Okla. 126, 200 Pac. 714.

Section 5271, Compiled Laws of 1921, reads as follows:

"When Instruments Void. Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

This court in the case of Wells et al. v. Guaranty State Bank, 56 Okla. 688, 156 Pac. 896, in the second paragraph of the syllabus, uses the following language:

"Where property is conveyed with intent to defraud, the same may be treated as a nullity, and the property may be attached the same as if no conveyance had been made."

The case is quite similar to the case at bar. One of the defendants had deeded property to his wife in order to defraud his creditors, and the property was attached by plaintiff bank, one of the creditors of the defendant making the conveyance. Actions of this character between members of families and near relatives are always looked on with suspicion. In the case of Wimberly v. Winstock et al., 46 Okla. 645, 149 Pac. 238, the first and second paragraphs of the syllabus use the following language:

"In a suit in equity, attacking a conveyance of lands as fraudulent against creditors, the fact that the parties to the conveyance are related by blood or marriage does not, of itself, establish fraud in such transfer; but such fact of relationship may be considered in connection with other evidence, tending to impeach the transaction; and in such case, especially if between near relations, who are members of the same household, the transactions will be given much closer scrutiny than if between strangers.

"In such cases, it is often impossible to prove actual fraud and collusion between the parties to the conveyance, when attacked by third persons, by direct and positive evidence; and the attacking party is often compelled, through the inherent necessities of the situation, to rely upon presumptive evidence, growing out of the indicia and badges of fraud, developed by the circumstances attending the transaction, and therefore the range of inquiry in such cases must necessarily be very extensive, and bring within its scope all the circumstances bearing upon the question."

The general rule applying to the construction of conveyances between near relatives is stated in 20 Cyc. 601, in the following language:

"2. Transfers between Relatives. The fact that the parties to a conveyance are related to each other, either by blood or marriage, does not of itself establish fraud in the transfer; but the fact of relationship may properly be considered in connection with other evidence tending to impeach the transaction. In some states it is held that the transaction will be more closely scrutinized than if it were between strangers, and that it may be shown to be fraudulent by less proof than in cases where such relationship does not exist; and that the party claiming the benefit of such transaction is held to a fuller and stricter proof of its justice, and the fairness of the transaction, after it is shown to be prima facie fraudulent, than would otherwise be required. If a fair price is paid, the transaction will not be held fraudulent merely because the parties are related to each other; but the con-

reyance will be looked on with suspicion where the grantor is heavily indebted and the conveyance is of all his property. If the consideration is fictitious and the conveyance is made when the grantor is insolvent, the conveyance will be set aside. If the consideration is inadequate, the sale will be deemed fraudulent where the seller is heavily indebted and the sale is attended with suspicious circumstances, such as the fact that the transferee is possessed of no means, the fact that the sale is on a long credit, the fact that there is no reasonable apparent motive for the purchase, the fact that the seller takes an active interest in the property and business after its transfer, the fact that the parties cannot explain how the indebtedness with the grantee arose and how the amount claimed is made up, or the fact that the consideration is an unsecured note of the grantee who is insolvent," etc.

Under the evidence in this case and the authorities herein cited, we are satisfied that J. R. Sparks was endeavoring to cover up his property and place it beyond the reach of his creditors, and that the ground of attachment in this suit should have been sustained, and that the court committed error in discharging the attachment. For these errors, the case is reversed and remanded to the trial court, with direction to set aside the order discharging the attachment, and enter an order sustaining the attachment, and proceed with this case in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. pp. 641, 642 § 407; 12 R. C. L. p. 514; 2 R. C. L. Supp. p. 1439; 4 R. C. L. Supp. p. 760. (2) 27 C. J. p. 804 § 735; p. 822 § 771. (3) 6 C. J. p. 205 § 375; 27 C. J. p. 702 § 539; p. 707 § 545.