## PARKS et al. v. ILLINOIS LIFE INSURANCE CO. OF CHICAGO, ILL.

No. 23857. Jan. 7, 1936.

Rehearing Denied Feb. 18, 1936.

Hagan & Gavin, for plaintiffs in error.

A. J. Kriete, Randolph, Haver, Shirk & Bridges, and Harold Lee, for defendant in error.

CORN, J. This is an action upon a note and mortgage executed by Laura Parks, individually, and as trustee and independent executrix of the estate of O. F. Parks, deceased, in which it is sought to foreclose a mortgage on certain lands in Creek county.

At the trial the parties entered into a stipulation to the effect that the premises involved were the property of O. F. Parks at the time of his death on January 24, 1911; that O. F. Parks was a resident of the state of Texas, and that his last will and testament was admitted to probate in Dallas county, Tex., and letters testamentary were issued to Laura Parks; that the last will was admitted to probate as a foreign will in Muskogee county, Okla., and on April 26, 1911, letters testamentary were issued to Laura Parks in that court; that there has been no decree of distribution or discharge made by the Muskogee county court; that notice to creditors has been given and the time for presentation of claims has expired, and that no claims against said estate have been presented; and that the executrix of the estate, since the probate of the will, has received more than sufficient money to cover the expenses of the administration.

It is further stipulated that on October 14, 1925, Laura Parks, as an individual and as trustee and independent executrix of the estate of O. F. Parks, deceased, executed and delivered for a valuable and sufficient consideration the note and mortgage sued on and that no order authorizing or approving said mortgage has ever been made by the county court of Muskogee county, and that the plaintiff herein is the owner and holder of said note and mortgage.

After the suit was filed, Laura Parks conveyed all of the land in question to her children, Oakley Fay Parks Brown, Annie L. Parks Neilson, Goldie Ray Parks Schneider, Dorothy K. Parks Odeneal, and Oscar Lonnie Parks. By order of the court these children were made parties defendant in the foreclosure action.

The will of O. F. Parks, deceased, which was introduced in evidence, is as follows, omitting certificate of witnesses:

"Last Will of O. F. Parks, Dec'd. No. 4979

"State of Texas, County of Dallas.

"Know All Men By These Presents:

"That, I, O. F. Parks, being of sound mind and disposing memory, do make and publish this, my last will and testament, hereby revoking all others heretofore by me made.

"First. I desire that all my just debts be paid.

"Second. My estate consists of my undivided one-half of the community estate of myself and wife, Laura Parks, situated in the State of Texas, and the State of Oklahoma.

"Third. I give and bequeath all my estate that I may be seized and possessed of at the time of my death, both real and personal to my beloved wife, Laura Parks in trust during her natural life or widowhood, and for the use and benefit of my children, Oakley Fay Parks Brown, Annie L. Parks, Goldie Ray Parks, Dorothy C. Parks, and Lonnie O. Parks, share and share alike. I give my wife the right to manage, control and lease any and all of my property during her natural life or widowhood, with full authority and right to sell and dispose of any portion of my said estate for the purpose of maintenance and education of our said children or for the purpose of reinvesting same, she to be the exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same, and she is to act independent of the action of any court.

"Fourth. I desire and I hereby give my full management and control of my estate with authority to sell and make deed or deeds of conveyance to any part or parts thereof, for the purpose of maintaining herself and our children, and for the purpose of reinvestment and to reinvest same as to her may seem for the best interest of our estate, and I hereby give her full authority to reinvest any part of said estate as to her may seem for the best interest of my estate, so long as she remains a widow, or so long as she may desire to hold the community estate together, she to be the exclusive judge of the necessity to sell, and of the kind of investment to be made. In case my wife, Laura Parks shall marry again, or in case she should grossly mismanage or squander my estate, then and in that event, I desire that all of my property on hand shall go to my children, and I hereby bequeath to them, Oakley Fay Parks Brown, Annie L. Parks, Goldie Ray Parks, Dorothy C. Parks and Lonnie O. Parks, the remainder of my estate then on hand, share and share alike, subject however, to the provisions hereinafter made.

"Fifth. I desire that neither of my children shall dispose of their interest in my estate or any part thereof, in any manner whatever, contrary to the wishes of my wife, during her widowhood. And in the event that they or either of them shall attempt to sell their interest in my estate or transfer or dispose of same in any manner whatever, other than meets with the entire approval of my wife, Laura Parks at any time, during her widowhood, then and in such event the bequest above made as to such one, either or all of them as may attempt to break my will or disregard my wishes herein stated shall be and is hereby revoked as to such a one either or all of them as may attempt to break my will or disregard my wishes herein expressed, and in lieu of such bequest herein made such a one, I hereby bequeath to each of them the sum of one hundred dollars which is to be their full share in my said estate, and the balance of my estate shall go to my other children not contesting said will or disregarding my wishes expressed share and share alike.

"Sixth. I hereby nominate and appoint my beloved wife, Laura Parks, as the sole and independent executrix of my last will and testament without bond, and it is my wish and I hereby provide that the probate court or other courts of Dallas county or in any other county in the State of Texas, or in the State of Oklahoma shall have no further jurisdiction or take any further action with reference to my estate, other than to probate this my will and require the filing of an inventory and appraisement of my estate.

"Seventh. I hereby appoint my beloved wife Laura Parks, as guardian and trustee of the person and estate of our minor children, Annie L. Parks, Goldie Ray Parks, Dorothy C. Parks, and Lonnie O. Parks without bond, she to have control, management and right to dispose of any and all property belonging to said minors, without the supervision and order of the probate court of the State of Texas, or the State of Oklahoma, hereby giving her full authority to sell, rent, lease, manage and dispose of any part of their estate, and to reinvest the same in any manner that to her may seem for the best interest of their estate, she to be the judge thereof. In case of partition of the property and she remains the guardian of our children and their estate, I desire she shall continue to act independent of the court, and shall not be required to give bond, but, I desire that she make the annual reports to the court as provided by law.

"Eighth. In the event that my beloved wife, Laura Parks shall marry again, then I hereby provide that all of her authority as independent executrix without bond shall cease, and that all of my property then remaining shall immediately vest in my said children and be partitioned among them share and share alike, as herein provided.

"Witness my hand, in the presence of Henry Hatcher and Hiram F. Lively, witnesses, whom I have requested to witness my signature to this my will, and to sign same in my presence and in the presence of each other, this the 24th day of May, 1910 A. D.

"Erasure and interlineations made before signing. O. F. Parks."

The parties stipulated that the provisions of the Texas statutes in force at the time the O. F. Parks will was admitted to probate relative to community estate and the powers of executors under wills, were as follows:

"Article 2578. Upon the dissolution of the marriage relation by death, all property belonging to the community estate of the husband and wife shall go to the survivor, if there be no child or children of the deceased or their descendants; but if there be a child or children of the deceased, or descendants of such child or children, then the survivor shall be entitled to one-half of said property, and the other half shall pass to such child or children, or their descendants. But such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive.

"Article 3448. Whenever by the terms of a will an executor is authorized to sell any property of the testator, no order of the county judge shall be necessary to authorize the executor to make such sale, and, when any particular directions are given by a testator in his will respecting the sale of any property belonging to his estate, the same shall be followed, unless such directions have been annulled or suspended by order of the court."

It is further stipulated by the parties that any statute of the state of Texas or any decision of the state of Texas might be considered by the court in this cause as fully as if said statute or decision had been pleaded and proved.

The plaintiff introduced certain testimony to show that the Exchange Trust Company, the original mortgagee of the land in question, made five loans to Laura Parks on land in Creek, Wagoner, Tulsa, and Seminole counties, and that two of the loans had been paid off.

The plaintiff introduced evidence to show that a party purchased a royalty interest from Laura Parks in certain lands in Seminole county, which lands were incumbered by a mortgage to the plaintiff, which mortgage was paid off at the time the royalty was purchased.

There was also introduced in connection with this testimony a certain power of attorney executed by all of the children of Laura Parks giving Laura Parks full and complete control of the lands of O. F. Parks in the state of Oklahoma or elsewhere. Said power of attorney is dated July 30, 1931, and is executed by Oakley Fay Parks Brown, Annie L. Parks Neilson, Goldie Ray Parks Schneider, Dorothy K. Parks Odeneal, and Lonnie O. Parks.

The court found the issues in favor of the plaintiff and against the defendant Laura Parks, individually, and as trustee and independent executrix of the estate of O. F. Parks, for the amount sued for, ordering and decreeing the foreclosure of the mortgage in question as against all of the defendants. Motion for new trial was made and duly overruled by the court.

The first question which arises is whether or not Laura Parks is authorized by the will of O. F. Parks to execute the mortgage in question, either as trustee or executrix. It is evident that she does not have such authority as an executrix, for the reason that the statute does not authorize a mortgage by an executor, except in certain instances. Section 1267, O. S. 1931. As to whether she is authorized to execute the mortgage as trustee involves a construction of the will.

The will was before this court in the case of Parks et al. v. Lefeber, 162 Okla. 265, 20 P. (2d) 179. In that case Laura Parks had sold certain lands belonging to the estate of O. F. Parks, and the validity of the conveyance was in question, and this court held·

"The record shows that, while the probate proceeding was pending in the county court of Muskogee county and after the qualification of Laura Parks as executrix of that estate, she, individually, and as executrix under the will of O. F. Parks, deceased, executed and delivered a deed to the property in question to H. W. Sanderson; that that deed was filed for record on March 28, 1923, at 8:00 o'clock a. m.; that thereafter and on that date H. W. Sanderson executed and delivered the note and real estate mortgage involved in this action to J. C. Culbertson; that thereafter and on that date H. W. Sanderson conveyed the property back to Laura Parks. * * *

"We decline to determine whether or not Laura Parks was authorized to mortgage the land for the reason that the record shows that she did not mortgage it. * * *

"We hold that a devisee under the provisions of a will may convey the real estate devised while the probate proceeding is pending and prior to the entry of the decree of distribution, subject to the payment of the indebtedness against the estate, the costs of administration, and such other or-

ders as the county court is authorized to make under its probate jurisdiction, the purchaser thereof buying at his own risk subject to administration."

In that transaction she complied strictly with the provisions set forth in paragraphs 3 and 4 of said will, to wit:

"I give my wife the right to manage, control and lease any and all of my property during her natural life or widowhood, with full authority and right to sell and dispose of any portion of my said estate for the purpose of maintenance and education of our said children or for the purpose of reinvesting same, she to be exclusive judge of the property to be sold and of the necessity for the sale, as well as the reinvestment of same, and she is to act independent of the action of any court.

"Fourth. I desire and I hereby give my full management and control of my estate with authority to sell and make deed or deeds of conveyance to any part or parts thereof, for the purpose of maintaining herself and our children, and for the purpose of reinvestment and to reinvest same as to her may seem for the best interest of our estate, and I hereby give her full authority to reinvest any part of said estate as to her may seem for the best interest of my estate, so long as she remains a widow, or so long as she may desire to hold the community estate together, she to be the exclusive judge of the necessity to sell, and of the kind of investment to be made."

The Supreme Court of Missouri in Trigg v. Trigg, 192 S. W. 1011, construed a will with the following provisions:

"Second. For the purpose of supporting and maintaining my beloved wife and children, I give, devise and bequeath all my property of every kind and nature unto my beloved wife, Julia M. Trigg, with power to sell and dispose of as she may see fit and proper for the support of herself and our children, and whatever may be left of my estate at her death, if any, I desire that it shall go to my children, share and share alike. I hereby appoint my beloved wife, Julia M. Trigg, executrix of this my last will and testament, without a bond to be given by her."

The court in the opinion, on pages 1014 and 1015, states:

"It has long been the law in this state that, in construing wills, the courts should have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them. Section 583, R. S. 1909. While performing the solemn duty of executing his will, the testator evidently realized that, if he should pass away during the minority of these helpless children, the duty would devolve upon some one to support and maintain them during this period. His mind very properly reverted to his wife as being the most suitable person to fill this important position. The language used in said instrument indicates that he had the utmost confidence in her and made his will accordingly. He gave to her all of his property without requiring a bond, 'with power to sell and dispose of as she may see fit and proper for the support of herself and children, etc.' He did not require her to sell the property for cash, but left her untrammeled, to dispose of it in some other way, if she saw fit to do so, in carrying out the provisions of the will. If the income from his estate should prove to be insufficient to enable her to support and maintain herself and children, it is manifest that he must have expected her, in some manner, to realize from the property that which was necessary to cover the deficiency of income, and, in so doing, to use her best judgment.

"But it is insisted by appellants that when Mrs. Trigg, after her husband's death, came face to face with this proposition, her only alternative was to sell the property for cash, even at a sacrifice, if necessary, in order to raise adequate means for the support and maintenance of herself and children. We are not favorably impressed with this contention, as applied to the facts presented in the record before us. It would have been unbusinesslike for testator, in providing for the support and maintenance of his wife and three small children, to have arbitrarily required that his property should be sold for cash, although there might be no demand for it, and the property sacrificed thereby.

"Suffice it to say, testator took no such narrow view of the situation as that contended for by appellant. He neither required, nor expected her, to sell for cash, if in her judgment she saw fit to pursue a different course, in complying with the provisions of the will. She was not authorized to give the property away, nor to dispose of it in any other manner than that provided for in the will. The property was not given away, but disposed of in accordance with the plain provisions of the will. We are of the opinion that, under the broad power conferred by said instrument, she would have been authorized to borrow the necessary funds for the purposes aforesaid, and to have secured the same by deed of trust on the property in controversy. In other words, the language aforesaid conferred upon the widow the right to sell for cash on time, or to mortgage the property, in order to raise the necessary funds for the support and maintenance of herself and children. The conclusion thus reached is supported by the great weight of modern

authority. 2 Perry on Trusts (6th Ed.) section 768, p. 1272; 9 Am. & Eng. Encyc. of Law (2d) p. 540; Ironside v. Ironside, 150 Iowa, loc. cit. 632, 130 N. W. 414; Waterman et al. v. Baldwin, Trustee, et al., 68 Iowa loc. cit. 260, 26 N. W. 435; Connely v. Putnam, 51 Tex. Civ. App. 233, 111 S. W. 164; Andrew v. Auditor, 5 Ohio N. P. loc. cit. 128; Kent v. Morrison, 153 Mass. loc. cit. 140, 26 N. E. 427, 10 L. R. A. 756, 25 Am. St. Rep. 616; Jackson v. Everett (Tenn. Sup.) 58 S. W. loc. cit. 342; McCreary v. Bomberger, 151 Pa. 323, 24 Atl. 1066, 31 Am. St. Rep. 760; Am. H. M. Soc. v. Wadhams, 10 Barb. (N. Y.) 597; Benz v. Fabian, 54 N. J. Eq. loc. cit. 620, 35 Atl. 760; Mansfield v. District, etc., Ass'n, 154 Cal. loc. cit. 147, 97 P. 150; Lueft v. Lueft, 129 Wis. loc. cit. 540, 109 N. W. 652, 7 L. R. A. (N. S.) 263, 9 Ann. Cas. 639, and cases cited; Phelps v. Harris, 101 U. S. loc. cit. 381, 25 L. Ed. 855; Platt v. Union Pacific R. Co., 99 U. S. loc. cit. 61, 25 L. Ed. 424; Thurmond v. Faith, 69 Ga. loc. cit. 838."

This court in Roberson et al. v. Hurst, 80 Okla. 115, 193 P. 402, construed a will which contained similar provisions found in this will. A part of the will in that case is as follows:

"All of my real estate of any kind and every kind shall go to my wife, Henrietta Roberson, and her three minor children, * * * provided that my said wife, Henrietta, shall have absolute control of said estate during the minority of any and all of said minors with all the authority above mentioned. * * *

"My said wife, Henrietta Roberson, shall have full control and management of my entire estate after my death and so long as she may live with full power and authority to lease, let and rent any of my real estate and if in her opinion it shall be necessary for the support, education and maintenance of her minor children, or either of them as for the best interest of my said estate, she shall have the full power to sell any part of my estate and if she shall so prefer to reinvest the proceeds of said estate for the benefit of herself and her minor children."

In the body of the opinion this court said:

"It seems to us that the effect of these provisions of the will is to vest the estate in Mrs. Roberson in fee, with a contingent remainder to the heirs. The only limitations imposed upon the authority of Mrs. Roberson to deal with this lot were whether in her opinion such action was necessary for the support, education, and maintenance of her minor children or for the best interest of the estate. If these circumstances existed, and there is no contention that they

did not, it seems to us that Mrs. Roberson exercised full control over the lot; to lease, let, or sell the same in precisely the same manner as an owner in absolute fee simple. It is true that the power to mortgage is not specifically conferred in the will, but this would be included in the power to exercise full control or in the greater power to sell, which were specifically granted."

The question of deficiency judgment against Laura Parks as trustee is not presented or briefed; therefore, we do not express an opinion thereon.

The fact that she designated herself as an individual as well as trustee and executrix in the execution of the notes and mortgages in question, in view of what has been heretofore stated in this opinion, was effective only to the extent to render her liable personally and as trustee.

The judgment of the trial court against Laura Parks as trustee of the estate of O. F. Parks and against herself personally is affirmed, and said judgment as to her as executrix is reversed.

OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, and WELCH, JJ., concur. McNEILL C. J., and PHELPS and GIBSON, JJ., dissent.

McNEILL, C. J. (dissenting.) The majority opinion extends the rule announced in the case of Roberson et al. v. Hurst, 80 Okla. 115, 190 P. 402, as applicable to a testamentary trustee. I am unwilling to acquiesce in that rule when the power to mortgage is not specifically conferred in the will.