## JORDAN et al. v. CITY NAT. BANK OF FT. SMITH, ARK.

No. 27565.  Nov. 9, 1937.

F. L. Welch, for plaintiffs in error.

R. H. Stanley, for defendant in error.

PHELPS, J. Defendant in error, plaintiff below, brought suit in the district court of Pushmataha county against M. D. Jordan on a judgment obtained against the defendant in California. In an attachment proceeding accompanying the suit certain real estate in Pushmataha county was levied upon as the property of the defendant. Lyda V. Jordan and Elizabeth S. Jordan, plaintiffs in error, sister and daughter respectively of the defendant M. D. Jordan, intervened, asserting ownership to the property levied upon. The allegations of the petitions in intervention were placed in issue by plaintiff, who alleged insolvency of the defendant and that said conveyances were made with intent to defraud, hinder, and delay his creditors, and that said conveyances were without a fair and reasonable consideration and were void as to the plaintiff.

The cause was tried to the court without a jury. Judgment was for plaintiff as to defendant M. D. Jordan and in favor of interveners in the attachment proceedings. Plaintiff filed motion for new trial as to that part of the judgment favorable to interveners, asserting accident and surprise, error of law, and insufficiency of the evidence and that the judgment was contrary to law; also, that the court misconstrued the issues involved and tried the case as a law action instead of in equity, thus subordinating facts indicating fraud. From the order sustaining motion for new trial, interveners appeal, assigning as error that the order granting a new trial is contrary to the law and the evidence and is an abuse of discretion.

The real estate involved was conveyed by defendant to interveners in April, 1933, more than two years prior to the date of the judgment sued on in the present case. Plaintiff assails the conveyances, not by evidence from other witnesses, but upon conjectural inferences drawn from the testimony of the defendant and from mere suspicion arising from the relationship of the parties. Under the facts disclosed by the record, we conclude that the question of solvency or insolvency of the defendant, M. C. Jordan, at the time of the execution of the conveyances is not material. An analysis of the evidence, pertinent to the determination of the principal question involved, is proper. The defendant, M. D. Jordan, being called as a witness by plaintiff, testified:

"Q. At this time you do not have any property in the state of Oklahoma, in Pushmataha county, save and except some scattering holdings of land, do you? A. I own some land in Pushmataha county. Q. Of the assessed value of about $300? A. I don't know the assessed value. Q. You don't have any other property in Pushmataha county, do you? A. No, sir. Q. At the time you deeded that property, that practically covered all the land you had in this county, didn't it? A. I deeded to them lands that belonged to them that were in my name. Q. Had you bought it for them? A. I had acquired it for them, some by purchase and some by foreclosure of mortgages and notes, all of which were theirs. * * * Q. Where did your daughter get the money she purchased property with? A. Mrs. Jordan received from her father, Geo. A. Stratton, of Canada, $5,000 in bonds against a Canadian Power Company. He sent those securities to Mrs. Jordan. Mrs. Jordan gave those to Elizabeth. I sold them at Mrs. Jordan's request and put them into a trust account, for the use and benefit and account of Elizabeth Jordan, who was a minor at that time. A little greater than $5,000. Q. Lyda V. Jordan is your sister? A. Yes, sir. Q. Where did she get her money? A. I have the record, I will give it to you. My sister, Miss Lyda Jordan, owned in 1918, $3,500 of preferred stock of American Republic Corporation, located in New York. On February 6, 1918, at her request, I sold $2,000 of those, of that preferred stock, receiving $2,052.67 therefor. And on February 26, 1918, I sold $1,500 of that same stock for $1,507.80. In addition to that, from time to time, there was sent to me to be placed to her credit and used in the M. D. Jordan trust account, other funds from my brothers. Q. All this money from your daughter's funds and from your sister's funds, you invested in real estate in your own name? A. No, sir. No. Q. You did invest this particular money that purchased this particular land in your own name? A. No, sir. That land was not purchased, some was acquired by foreclosure. I can give you the history. Q. You took title in your own name? A. I handled all funds in my name. Q. You didn't take it as trustee? A. No. Q. But as an individual? A. Yes, sir. Q. And kept it in your own name for a good many years, 1918, 1919, until 1933? A. All property and loans were made in my name, kept separately and were marked accordingly as to ownership. Q. But it wasn't ear-marked as to the record? A. That was a matter between me and them. Q. You took their money and invested it in property and took it in your own name? A. The money was largely invested in loans. Q. And loaned in your name? A. Always."

Individual ledger sheets of the First National Bank at Antlers showed a savings account carried in the name of M. D. Jordan, "Trustee." This account covers a period of time extending from December 29, 1917, to June 11, 1934, and reflects several hundred items representing deposits and withdrawals. In his testimony the defendant went into detail in explaining various items relating to the account, all to the effect that they represented collections and investments made for and on behalf of interveners. That at no time were any of the funds used in his personal business transactions, nor did he claim title to said funds or to any property in which any of such funds were invested. Further, that he had not obtained credit from plaintiff or anyone else on the faith of ownership in these funds, or on property in which such funds were invested.

The testimony presented in support of the allegations of the petition of intervention stands undisputed. In this state of the record, can the judgment of the trial court granting a new trial be sustained? We are cognizant of the rule that every reasonable presumption is indulged that a new trial was granted in the exercise of wise discretion, but at the same time we are mindful of an equally important rule of law that a legal discretion is governed by legal rules and principles which must be applied in each particular case as the facts justify.

In Russell v. Margo, 180 Okla. 24, 67 P. (2d) 22, this court held:

"Where necessary on appeal from order granting new trial reviewing court will examine entire record to determine whether trial court, in granting new trial, abused its discretion, acted arbitrarily, or erred on some unmixed question of law.

"Where reviewing court determines that trial court acted arbitrarily, clearly abused its discretion or erred on some unmixed

question of law in granting new trial, order granting new trial will be reversed."

In its motion for new trial plaintiff relies principally upon the insufficiency of the evidence to sustain the judgment. A careful examination of the record convinces us that the evidence not only is sufficient to sustain the judgment originally entered but that a different judgment would be against the clear weight of the evidence. In Mott v. Zimmerman, 100 Okla. 299, 229 P. 227, we said:

"The general rule is that where the existence of grounds of attachment is properly denied by the defendant, it throws upon plaintiff the burden of showing the existence of such grounds by a preponderance of the evidence; that where he fails to sustain such burden of proof, the 'attachment should be dissolved."

In the present case plaintiff quite properly refers to the fact that interveners are sister and daughter of the defendant. The relationship of the parties is properly a matter for consideration in connection with the evidence tending to challenge the good faith of the transaction. However, this relationship, of itself, is not sufficient to establish fraud. The rule in this regard is stated by this court in First Nat. Bank v. Sparks, 118 Okla. 45, 246 P. 638. In that case, in the syllabus we said:

"In a suit in equity, attacking a conveyance of lands 'as fraudulent against creditors, the fact that the parties to the conveyance are related by blood or marriage does not, of itself, establish fraud in such transfer; but such fact of relationship may be considered in connection with other evidence tending to impeach the transaction; and in such case, especially if between near relations, who are members of the same household, the transactions will be given much closer scrutiny than if between strangers."

The evidence in the case at bar clearly shows that defendant held the property conveyed solely as trustee for the use and benefit of interveners. It appears, further, that the defendant had no interest in the property, or in the funds used to acquire the property; that no representation of ownership in such property was made by defendant in incurring the indebtedness owing to plaintiff. In 26 R. C. L. at page 1261, it is said:

"Where a deed to a debtor conveys to him only 'a naked legal title, as a trustee for others, he takes under it no interest that can be seized under execution or attachment, nor can a judgment creditor have his claim satisfied out of property held in trust for another, no matter how completely his debtor may have exercised apparent ownership over it, unless it was on the faith of such ownership that credit was given."

In Adams v. Williams, 248 S. W. 673, in the syllabus, the Supreme Court of Texas held:

"Property belonging to a trust estate in the hands of a trustee in which property such trustee has no personal interest, is not subject to seizure and sale for his individual debts." Streeter v. Shull ex rel. Bank Commissioner, 154 Okla. 160, 7 P. (2d) 636.

At the time the case was tried, interveners were residing in California and did not attend the trial. This circumstance alone should not weigh heavily against the evidence which fully sustains the allegations in their petitions. Their testimony would have been merely cumulative, adding little or nothing to the weight of the evidence. Obviously, a new trial could not properly replace the judgment originally entered in the cause.

"A party is entitled to have his day in court; both parties are entitled to this, but neither party is entitled to have more than a fair, reasonable opportunity to establish his claim or defense. To allow more would be to protract litigation to the extent which would preclude the administration of justice." Hobbs v. Smith, 27 Okla. 830, 115 P. 347.

From a careful examination of the record, we are convinced that in granting plaintiff's motion for new trial the trial court clearly abused its discretion. Accordingly, the judgment granting a new trial is reversed and judgment is hereby rendered in favor of interveners.

OSBORN, C. J., and RILEY, CORN, GIBSON, and HURST, JJ., concur. WELCH, J., not participating. BAYLESS, V. C. J., and DAVISON, J., absent.