The FARM CREDIT BANK OF WICHITA, Wichita, Kansas, a federally chartered corporation; and Citizens Bank of Wakita, Wakita, Oklahoma, a state banking association, Appellants,

v.

Cecelia WOODRING s/p/a Cecelia Simons s/p/a Cecelia Simons Woodring, Trustee of the Cecelia Simons Trust dated January 24, 1972 and Charles (Gene) Simons, Trustee of the Cecelia Simons Trust dated January 24, 1972; The Cecelia Simons Trust dated January 24, 1972; John J. Simons, an individual; Rosalie Terrill, an individual; The Beneficiaries, whether contingent, vested, named, unnamed, born, or unborn of the Cecelia Simons Trust dated January 24, 1972, Appellees.

No. 74949.

Supreme Court of Oklahoma.

April 27, 1993.

David C. Butler, Enid, for appellant, Farm Credit Bank of Wichita.

Rick M. Bramlett, Medford, for appellant, Citizens Bank of Wakita.

Robert Stormont, Oklahoma City, for appellees.

KAUGER, Justice:

 The issue presented is whether a cause of action brought by the creditors of a defaulting trust for the fraudulent transfer of unencumbered trust realty becomes moot when the trust is terminated by the pretrial death of the trustor. We find that because a trustee has a duty to pay valid trust debts before distributing trust property, the pretrial death of a trustor does not moot a cause of action for fraudulent transfer[1] pursuant to the Uniform Fraudulent Transfer Act (Fraudulent Transfer Act),[2] 24 O.S.1991 § 117.[3]

---

1. A case is moot only if a decision on the question raised will not result in the granting of any relief. *Edwards v. Hanna Lumber Co.*, 415 P.2d 980, 981 (Okla.1966); *State v. Pyle*, 62 Okla. Crim. 411, 71 P.2d 997, 999 (1937); *Westgate Oil Co. v. Refiners Production Co.*, 172 Okla. 260, 44 P.2d 993, 994 (1935). Here, if the Banks prevail on their fraudulent conveyance claims, two alternative remedies are available: 1) cancellation of the December 28, 1988, conveyances; or 2) imposition of liens in favor of the Banks on Tracts A and B. Because relief may be granted if the Banks are allowed to proceed on the fraudulent conveyance claim, the cause is not moot. Title 24 O.S.1991 § 119 provides:

"A. In an action for relief against a transfer or obligation pursuant to the provisions of the Uniform Fraudulent Transfer Act, a creditor, subject to the limitation of Section 9 of this act [24 O.S.1991 § 120], may obtain:
1. avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; or
2. an attachment or other provisional remedy against the asset transferred or other property of the transferee as provided for by law; or

3. subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
a. an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, or
b. appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or
c. any other relief the circumstances may require."

2. Title 24 O.S.1991 § 112 et seq.

3. Title 24 O.S.1991 § 117 provides:

"A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
B. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the

## FACTS

On January 24, 1972, Cecelia Simons Woodring (Trustor) created the Cecelia Simons Trust (Trust). The agreement conveyed three tracts of real estate (Tracts A, B, and C) to the Trustor and her son, Charles Gene Simons (Trustee) as co-trustees (Trustees). The irrevocable trust agreement[4] specifically provides for the Trustee to pay the reasonable Trust expenses **and the expenses of the Trust estate.**[5] By its terms, the Trust terminates on the death of the Trustor. At termination, the trustee is authorized to pay the Trustor's debts and may do so through the sale of trust assets.[6] The Trustee's powers continue after termination until final distribution.[7] Pursuant to the Trust Agreement, Tract A will go to the Trustor's daughter, Rosalie Simons (Rosalie), at termination. Tract B is to be distributed to the Trustor's son, John J. Simons (John), subject to John's payment of a pre-existing debt owed to the Trustor. Tract C is given to the Trustee upon payment of a loan made by the Trustor.[8] The record does not reflect whether these debts were paid.

On June 14, 1982, the Trustees, for the Trust and for the Trustor individually, executed a $56,000 note in favor of The Farm

---

transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."

Before the trial court, the Banks relied primarily upon § 117(A) asserting that the transfers were made after the obligations arose, for no consideration, and when the Trust was insolvent. However, we note that the Comments to § 1 of the model act indicate that § 117(B) may be applicable. Comment (7) provides in pertinent part:

"The definition of 'insider' is derived from § 101(28) of the Bankruptcy Code.... a trust may be found to be an insider of a beneficiary."

4. Section 24 of the Trust provides:

"Subject to the reservation herein, this trust is irrevocable and neither the trustor nor any other person shall have the right to revoke, amend, or terminate it."

5. Paragraph 13 of the Trust Agreement provides in pertinent part:

"My trustees shall have full power and authority ... (5) to pay any and all reasonable and necessary expenses incurred by my trustees in the administration of such trust ... (8) to receive compensation and to pay all necessary and proper expenses of the trust estate ..."

6. Paragraph 18 of the Trust Agreement provides in pertinent part:

"Upon the death of the trustor, the trustee may pay all of the just debts of the trustor, including the expenses of her last illness, her funeral (sic) expenses and any unpaid taxes including State or Federal estate taxes, and for the purpose of carrying out the provisions hereof is specifically authorized to sell at public or private sale and on such terms and conditions as the trustee may deem proper, may make division and distribution of the rest and residue and remainder of the trust estate as follows:

That upon the death of the Trustor this trust shall terminate, and the Trustee shall forthwith distribute the corpus of this trust as follows:

Southeast Quarter (SE ¼) of Section Thirty-six (36), Township Twenty-eight North (28N), Range Seven (7), W.I.M., Grant County, Oklahoma, and the Southeast Quarter (SE ¼) of the Southwest Quarter (SW ¼) of Section Thirty-six (36), Township Twenty-eight North (28N), Range Seven (7), W.I.M., Grant County, Oklahoma, to Rosalie Terrill, free and clear of all indebtedness.

That John J. Simons is at this time indebted to trustor for money borrowed in the amount of $7,600.00 and interest at 5% per annum.

Subject to and upon repayment of unpaid balance of loan and funds advanced to John J. Simons by settlor as herein set forth:

Southwest Quarter of Section Thirty-three (33), Township Twenty-eight North (28N), Range Six (6), W.I.M., Grant County, Oklahoma, to John J. Simons, subject to mortgage of record.

That Charles (Gene) Simons is at this time indebted to trustor for money borrowed in the amount of $19,000.00 and interest at 5% per annum.

Subject to and upon repayment of unpaid balance of loan and funds advanced to Charles (Gene) Simons by settlor as herein set forth:

Northwest Quarter of Section Thirty-three (33), Township Twenty-eight North (28N), Range Six (6), W.I.M., Grant County, Oklahoma, to Charles (Gene) Simons, subject to mortgage of record...."

7. Paragraph 16 of the Trust Agreement provides as follows:

"The title, powers, duties, annuities and discretions herein conferred upon the trustee shall continue, after the termination of the trust, until final distribution."

8. Paragraph 18 of the Trust Agreement, see note 6, supra.

Credit Bank of Wichita. The note was secured by a mortgage on Tract C. Eighteen months later, the Trustees and the Trustor, in the same capacities, executed a $50,000 note in favor of Citizens Bank of Wakita (The Farm Credit Bank of Wichita and Citizens Bank of Wakita are referred to collectively as Banks). The note was secured by a second mortgage on Tract C. The Trust defaulted on the notes, and the Banks began foreclosure proceedings against Tract C in December, 1988. On December 27, 1988, in violation of the terms of the Trust,[9] the Trustees conveyed the real property to Rosalie and to John by warranty deeds. The parties stipulated that: 1) no consideration was received for the conveyances; and 2) if the Trust is indebted to the Banks as a matter of law, it is insolvent.[10]

The Banks filed this action on January 31, 1989, pursuant to 24 O.S.1991 § 117,[11] alleging that the December 27, 1988, conveyances were fraudulent. The Banks sought cancellation of the conveyances or the imposition of liens against Tracts A and B. The Trustor died before the conclusion of the fraudulent conveyance action. The trial court dismissed the Banks' action as moot finding that the trust provisions mandated distribution of the two tracts to trust beneficiaries. The Court of Appeals affirmed. It held that the Trust terminated upon the Trustor's death. It also found that because the beneficiaries became the owners of the tracts under the terms of the Trust, it was immaterial whether the December 27, 1988, conveyances were fraudulent. We granted certiorari on October 26, 1992, to address a question of first impression—whether a cause of action brought by the creditors of a defaulting trust for the fraudulent transfer of unencumbered trust realty survives when the trust is terminated by the pretrial death of the trustor.

**BECAUSE A TRUSTEE HAS A DUTY TO PAY VALID TRUST DEBTS BEFORE DISTRIBUTING TRUST PROPERTY, THE PRETRIAL DEATH OF A TRUSTOR DOES NOT MOOT A CAUSE OF ACTION FOR FRAUDULENT TRANSFER PURSUANT TO THE UNIFORM FRAUDULENT TRANSFER ACT (FRAUDULENT TRANSFER ACT), 24 O.S.1991 § 117.**

The Banks assert that the fraudulent conveyance action is not moot. They insist that the conveyances are fraudulent even if they occurred pursuant to the termination of the Trust at the Trustor's death. The Trust, Trustee, John and Rosalie (Beneficiaries) allege that the Banks' fraudulent conveyance claims became moot when the Trustor died. They claim that upon the Trustor's death, the Trustee had a legal duty imposed by the terms of the Trust to convey the real property to the beneficiaries. The Beneficiaries insist that a cancellation of the December 27, 1988, conveyances would be ineffective, because the title to the property automatically vested in them at their mother's death. In effect, the Beneficiaries claim that a distribution of trust property pursuant to the termination of a trust is not fraudulent as a matter of law.[12] We disagree.

9. Id.

10. Paragraph 3 of the parties' stipulations provides:
"That on December 27, 1988 Cecelia Simons Woodring and Charles Eugene Simons as Trustees made, executed and delivered warranty deeds, as attached as Exhibits M and N to Plaintiff's Motion for Summary Judgment herein, conveying the above described Tracts 1, 2 and 3 to Terrill and Simons, and that no consideration was received by the Trust for the conveyance of property therein, and that both before and after the conveyances by the Trust to Rosalie Terrill and John Simons in accordance with Exhibits M and N, if the Trust is indebted as a matter of law to FCB and Citizens, then the Trust was insolvent."

11. Title 24 O.S.1991 § 117, see note 3, supra.

12. In *Jordan v. City Nat'l Bank*, 181 Okla. 223, 73 P.2d 435, 438 (1937), this Court held that a trustee holding property for his sister and daughter could not be set aside as fraudulent where: 1) the trustee had no interest in the funds used to acquire trust property; and 2) the trustee did not represent any ownership interest in the trust property when his indebtedness was incurred. Additionally, the transfer in *Jordan* occurred more than two years after judgment was entered. *Jordan* differs from the facts presented here in that the note was executed by the Trustee in his representative capacity and the conveyance occurred not before but after suit was instituted. In *Streeter v. State*, 154 Okla.

## A.

### TITLE TO THE PROPERTY DID NOT AUTOMATICALLY VEST IN THE BENEFICIARIES AT THE TRUSTOR'S DEATH.

Although the real property was deeded to the Beneficiaries before their mother's death—in violation of the Trust Agreement [13]—they insist that a cancellation of the deeds would be futile. Their conclusion is premised upon the argument that the title to the properties automatically vested in them at the Trustor's death. This argument is not supported by the express provisions of the Trust or by extant law.

■ Paragraph 18 of the Trust Agreement provides that "... upon the death of the Trustor this trust shall terminate, and **the Trustee shall forthwith distribute the corpus of the trust ...**". (Emphasis provided.) Before conveyances could be made to either the Trustee or his brother, the same paragraph requires that the Trustee determine if certain loans have been repaid. Under the Trust, gifts to both the Trustee and to his brother-beneficiary are subject to and conditioned upon repayment of certain loans.[14] **The very language of the Trust document indicates that distribution and merger of equitable with legal title are not automatic.** Instead, it anticipates that some action by the Trustee is necessary before title transfer can be effected.[15]

■ If a trustee holds property in fee simple, trust property does not automatically vest in the beneficiaries. Rather, a conveyance is required from the trustee to the beneficiaries.[16] Depending upon the nature of the power vested in the Trustee, conveyances must be executed in favor of the beneficiaries.[17] Under Oklahoma law, if a trustee is given a power to sell or encumber the property, title is taken in fee simple.[18] Here, the Trustee had the authority to mortgage property for farm purposes [19] and the power to sell trust property to satisfy the debts of the Trustor [20]—he held the real estate in fee simple. Therefore, title to the property did not automatically vest in the Beneficiaries. An actual conveyance from the Trustor to the Beneficiaries was necessary to transfer the own-

---

160, 7 P.2d 636, 638 (1932), we found that, in absence of *estoppel*, the conveyance of realty by a Trustee cannot be set aside as fraudulent. In *Streeter*, the lender could not show that its loan was premised on knowledge that the Trustee owned the real property at issue. Here, the loans were made on the strength of the Trustees' authority to borrow on behalf of the Trust and upon the Trustor's signature as an individual. Indeed, neither the Trustee nor the Beneficiaries argue that the Trustee lacked the authority to mortgage Track C.

**13.** Paragraph 18 of the Trust Agreement, see note 6, supra.

**14.** Id.

**15.** Other provisions in the Trust Agreement indicate that the distribution was not automatic: 1) provision requiring the Trustee to determine whether Trustor debts should be paid by the Trust (Paragraph 18 of the Trust Agreement, see note 6, supra); and 2) provision authorizing the Trustee to pay the reasonable and necessary expenses of the administration of the trust estate (Paragraph 13 of the Trust Agreement, see note 5, supra).

**16.** *Williams v. Nylund*, 268 F.2d 91, 96 (10th Cir.1959) (Applying Oklahoma law.); 4 Scott, *The Law of Trusts*, § 345, p. 549 (4th Ed.1989); G. Bogert, *Trusts*, § 150, p. 534 (6th Ed.1987); Bogert, *Trusts & Trustees*, § 88, p. 526 (2nd Ed.1985).

**17.** *Williams v. Nylund*, see note 16, supra.

**18.** *Williams v. Nylund*, see note 16 at 96, supra; J. Rarick, "The Trustee's Estate & the Ultimate Interest," 8 Okla.L.Rev. 133, 177 and 180; Comment d to the *Restatement (Second) of Trusts*, § 88 provides in pertinent part:

"... The trustee may take an estate in fee simple although the estate is limited to him without mention of his heirs; and he may take an estate less than a fee although the estate is limited to him and his heirs. If the trustee is given power to make a sale or mortgage of the fee simple or to convey a fee simple to the beneficiaries, the trustee takes an estate in fee simple in the absence of evidence of a different intention of the transferor...."

**19.** Paragraph 4 of the Trust Agreement, see note 24, infra.

**20.** Paragraph 18 of the Trust Agreement, see note 6, supra.

ership of the property.[21]

## B.

## DUTY OF THE TRUSTEE TO PAY VALID TRUST DEBTS.

The Beneficiaries do not argue that the mortgages as to Tract C, the property specifically identified in the loan agreement, are invalid. They do assert that because Tracts A and B were not mortgaged, their transfer is not fraudulent as to the Banks.[22] This argument cannot be sustained under our statutory trust law.

■ Section 2 of the Trust Agreement[23] provides that as to the management, sale, or conveyance of Trust assets, the provisions of the Oklahoma Trust Act (Trust Act), 60 O.S.1991 §§ 175.1–175.53, apply unless limited or modified by the Trust terms. The power to sell trust property includes the authority to mortgage the trust assets.[24] Pursuant to 60 O.S.1991 § 174,[25] the liability for trust debts extends to the entire trust estate. It provides:

"Liability to third persons for any act, omission, or obligation of a trustee or trustees of an express trust when acting in such capacity, shall extend to the whole of the trust estate held by such trustee or trustees, or to so much thereof as may be necessary to discharge such liability, but no personal liability shall attach to the trustee or the beneficiaries of such trust for any such act, omission or liability."

Additionally, § 175.18[26] provides that the trust estate is liable for contracts executed by the trustee in his/her representative capacity. The Trust Act, as incorporated in

21. *Williams v. Nylund,* see note 16, supra; 4 Scott, *The Law of Trusts,* see note 16, supra; G. Bogert, *Trusts,* see note 16, supra; Bogert, *Trusts & Trustees,* see note 16, supra.

22. This argument extends to the authority of the Trustee to mortgage the property in his capacity as Trustee and to the Banks' knowledge of the terms of the Trust. These matters were not before the Court of Appeals and are not addressed here.

23. Section 2 of the Trust Agreement provides:

"With respect to the management of the trust estate, the sale and conveyance or transfer of the trust assets, the investment and the reinvestment of trust assets, the provisions of the Oklahoma Trust Act, §§ 175.1 to 175.53, Title 60, Oklahoma Statutes Annotated, being Chapter 4, Title 60, of the Session Laws of Oklahoma of 1941, except as otherwise limited or modified by the terms of this agreement, shall be binding and effective throughout the term of this trust even though the provisions of said Act may be modified or repealed."

24. *Parks v. Central Life Assur. Soc. (Mutual),* 181 Okla. 638, 75 P.2d 1111, 1114 (1938); *Parks v. Illinois Life Ins. Co.,* 176 Okla. 63, 54 P.2d 392, 397 (1936); J. Rarick, "The Trustee's Estate & the Ultimate Interest," see note 18 at 180, supra. Paragraph 18 of the Trust gives the Trustee authority to sell trust assets to pay the debts of the Trustor, see note 16, supra. Paragraph 4 of the Trust gives the Trustee the power to make loans for farm purposes. It provides in pertinent part:

"That the trustee is to continue and carry on any farming operations in which the trustor may be financially interested and operate any other farm which may be acquired by the trust and, inso (sic) doing, by way of illustration and not limitation of its powers ... to make or obtain loans or advances at the prevailing rate or rates of interest for farm purposes ..."

25. Title 60 O.S.1991 § 174 provides:

"Liability to third persons for any act, omission, or obligation of a trustee or trustees of an express trust when acting in such capacity, shall extend to the whole of the trust estate held by such trustee or trustees, or so much thereof as may be necessary to discharge such liability, but no personal liability shall attach to the trustee or the beneficiaries of such trust for any such act, omission or liability."
Section 174 has been a part of the Trust Act since 1919. See paragraph 2 of the Trust Agreement, note 23, supra.

26. Title 60 O.S.1991 § 175.18 provides in pertinent part as follows:

"Whenever a trustee shall make a contract which is within his powers as trustee, or a predecessor trustee shall have made such a contract, and a cause of action arises thereon: 1. The party in whose favor the cause of action has accrued may sue the trustee in his representative capacity, and any judgment rendered in such action in favor of the plaintiff shall be collectible by execution out of the trust property. In such an action the plaintiff need not prove that the trustee could have secured reimbursement from the trust fund if he had paid the plaintiff's claim...."
Although § 175.18 has been amended since it was enacted in 1941, the language quoted re-

the Trust Agreement, mandates payment of valid Trust debts.

Even if the Trust terms did not incorporate the Trust Act, a duty to pay the Trust debts could be inferred from other trust provisions. Here, the Trustor signed the notes and mortgages individually and in her capacity as Trustee. The express terms of the Trust provide that the Trustee has full power and authority to pay all necessary and proper expenses of the trust estate.[27] He is also authorized to pay the Trustor's personal debts on her death.[28] The Trustor signed the mortgages as an individual. Whether the debts are construed as a liability of the Trust or as a personal debt of the Trustor, the terms of the Trust Agreement anticipated that they would be satisfied from trust assets.

The terminating event of the Trust, the death of the Trustor,[29] did not divest the Trustee of all his powers. Paragraph 16 of the Trust Agreement provides that the powers and duties of the Trustee will continue until final distribution.[30] After termination, a trustee's powers continue for a reasonable time during which the trustee may perform such acts as are necessary to winding up the trust.[31] If a trustee properly incurs a liability in the administration of the trust, trust property can be applied in discharging the liability after termination.[32] Because a trustee has a duty to pay valid trust debts before distributing trust property, the pretrial death of the Trustor did not moot the Banks' action for fraudulent transfer pursuant to the Fraudulent Transfer Act, 24 O.S.1991 § 117.[33] To hold otherwise would encourage beneficiaries to pressure trustees to make premature distribution of trust assets when failure to do so would cause their interests to be diminished. It would also discourage mortgagees from making loans to Trusts because of fears the assets might be dissipated before debts were settled.

█ The purpose of the Fraudulent Transfer Act is to allow a creditor the opportunity to invalidate a transfer of assets made by a debtor if the transfer has the effect of placing the assets out of the reach of present and future creditors.[34] Although our research has not disclosed any cases dealing with the precise fact situation presented here, a number of cases hold that a transfer of property into a trust or in the creation of a trust to evade creditors is subject to the Fraudulent Transfer Act.[35] In addition, *Oklahoma Nat'l Bank v. Cobb*, 52 Okla. 654, 153 P. 134, 136 (1915), although promulgated before the enactment of the Fraudulent Transfer Act, is instructive. *Cobb* involved a transfer of property held under a parol trust to the trust beneficiary. The creditors of the

mains unchanged. See Paragraph 2 of the Trust Agreement, note 23, supra.

27. Paragraph 13 of the Trust Agreement, see note 5, supra. The trial court dismissed the action as moot without determining whether the loans are valid debts of the trust estate. Because the issue is not properly before this Court, we do not address it.

28. Paragraph 18 of the Trust Agreement, see note 6, supra.

29. Id.

30. Paragraph 16 of the Trust Agreement, see note 7, supra.

31. *In re Mullendore's Estate*, 297 P.2d 1094, 1098 (Okla.1956); *McNeal v. Hauser*, 213 P.2d 559, 561 (Okla.1949); Bogert, *The Law of Trusts & Trustees*, see note 16 at § 1010, p. 449, supra.

32. *Rothwell v. Rothwell*, 283 Mass. 563, 186 N.E. 662, 665 (1933); *Daly v. Crawford*, 279 Mass. 262, 181 N.E. 396, 398 (1932); Comment g to the

*Restatement (Second) of Trusts*, § 344 (1957) provides:

"Power to pay expenses. If the trustee properly incurs a liability in the administration of the trust (see § 188), he can properly apply trust property in discharging the liability although the time for the termination of the trust has arrived. See § 244."

33. Title 24 O.S.1991 § 117, see note 3, supra.

34. H. Jenkins, "Rights of Unsecured Estate Creditors Under the Uniform Fraudulent Transfer Act in Property Transferred Prior to Death," 45 Okla.L.Rev. 275 (1992); R. Dole & V. Teofan, "The Nonuniform Texas 'Uniform' Fraudulent Transfer Act," 42 Sw.L.J. 1029 (1989).

35. *The Cadle Co. v. Schultz*, 779 F.Supp. 392, 400–01 (N.D.Tex.1991); *Eck v. USA Property Co.*, 97 B.R. 74, 77 (N.D.Okla.1989); *Page v. Commissioner*, 61 T.C.M. (CCH) 2651, 2656, 1991 WL 83310 (1991); H. Jenkins, "Rights of Unsecured Estate Creditors Under the Uniform Fraudulent

trustee claimed the transfer was fraudulent and attempted to reach the property in satisfaction of the trustee's personal debts. This Court held that because no allegations or evidence of insolvency were presented, the creditors could not reach the transferred property. We indicated in *Cobb* that if insolvency had been shown, the property could have been reached to satisfy the trustee's debts.

Unlike the creditors in *Cobb*, the Banks here are not attempting to reach the trust property for satisfaction of the Trustee's debt. Rather, they seek to extinguish a debt of the trust estate. Additionally, here the insolvency issue is settled—the parties have stipulated that the Trust is insolvent.[36]

## CONCLUSION

The death of the Trustor did not moot the Banks' fraudulent conveyance claims.[37] If they prevail, the Banks may have the transfer canceled or a lien imposed.[38] The duty to pay the Trust debts is mandated by the Oklahoma Trust Act, 60 O.S.1991 §§ 174[39] and 175.18;[40] and it is reasonably inferred from the Trust Agreement.[41] There was no automatic merger of the beneficiaries' equitable interest with a legal title to the property in suit. We express no opinion on the authority of the Trustee to encumber the Trust property or on the Banks' awareness of the Trust terms.[42] The cause is reversed and remanded for further proceedings not inconsistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; REVERSED AND REMANDED.**

SIMMS, OPALA, SUMMERS and WATT, JJ., concur.

ALMA WILSON, J., concurs in part, dissents in part.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, J., dissent.

Transfer Act in Property Transferred Prior to Death," see note 34 at 279–80, supra.

**36.** Paragraph 3 of the parties' stipulations, see note 10, supra.

**37.** See discussion, note 1, supra.

**38.** Title 24 O.S.1991 § 119, see note 1, supra.

**39.** Title 60 O.S.1991 § 174, see note 25, supra.

**40.** Title 60 O.S.1991 § 175.18, see note 26, supra.

**41.** Paragraph 13 of the Trust Agreement, see note 5, supra; Paragraph 18 of the Trust Agreement, see note 6, supra.

**42.** See discussion, note 22, supra.